In re

Hage Construction Co.,

        Debtor.

Chapter 11

Bky Case No.: 09-44755

---

**DEBTOR'S AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

---

Hage Construction Co. ("Debtor") proposes the following as its Plan and Disclosure Statement pursuant to the United States Bankruptcy Code.[1][2]

## I. INTRODUCTION

On July 21, 2009 ("Filing Date"), the Debtor filed a case pursuant to Chapter 11 of the Code. The Debtor is filing this Plan and Disclosure Statement ("Plan"). Terms used in this Plan have the meanings given to them in the Bankruptcy Code unless the context requires otherwise.

Debtor's Plan is furnished pursuant to section 1125 of the Bankruptcy Code and is intended to provide all persons known to have claims against Debtor with sufficient information to permit them to make an informed judgment as to their votes to accept or reject the Plan. No representations concerning the Debtor or the Plan are authorized by the Debtor.

ANY REPRESENTATIONS OR INDUCEMENTS MADE FOR THE PURPOSE OF SOLICITING YOUR ACCEPTANCE, OTHER THAN THOSE IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR OR TO THE UNITED STATES TRUSTEE, WHO WILL, IN NECESSARY, CONVEY THIS INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY DEBTOR, BUT HAS NOT BEEN INDEPENDENTLY AUDITED. ALL STATEMENTS CONCERNING FINANCIAL DATA ARE MADE IN GOOD FAITH AND ARE INTENDED TO BE AS COMPLETE AND AS ACCURATE AS POSSIBLE. BANKRUPTCY COUNSEL FOR THE DEBTOR HAS NOT INDEPENDENTLY

---

[1] Unless otherwise indicated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. §101, *et seq*. (the "Code").

[2] This Disclosure Statement and Plan is filed pursuant to 11 U.S.C. §§ 1123 and 1125(f).

VERIFIED ANY OF THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT.

**Defined Terms.** The following definitions will be used for purposes of the Plan:

"Business Day" shall include any day that is not a Saturday, Sunday or Holiday as defined by Minnesota Statute § 645.44.

"Effective Date" means the first Business Day of the first calendar month following entry of an order confirming the Plan, unless such day would be less than eleven days after entry of an order confirming the plan, in which case it means the first Business Day of the next succeeding month.

## II. BACKGROUND OF DEBTOR'S BUSINESS AND EVENTS LEADING TO THE CHAPTER 11 CASE

The Debtor operates a construction business specializing in the installation of concrete. The Debtor employs 14 people and has been in business since 1965.

Prior to the commencement of this case, the Debtor's principal Oliver Hage started a second business, Highland Electric, Inc. ("Highland"). The secured lender for Highland was Alliance Bank, the major secured creditor in this Case. All loans to Highland were cross collateralized with the Debtor's personal property. Highland went out of business in the summer of 2008, and after its assets were sold and a deficiency of approximately $468,000 resulted. The Debtor reached a forbearance agreement with Alliance Bank in September 2008 and has complied with the terms of the forbearance agreement.

A second creditor, Granite Re, Inc. ("Granite") was a bonding company that provided bonds for certain projects of Highland. The Debtor signed an indemnity agreement for the bonds issued by Granite, who sought a judgment in State Court of approximately $700,000. The Debtor was unable to resolve the lawsuit with Granite, and had no choice but to seek relief under Chapter 11.

## III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, AND DESCRIPTION OF SAME

### 3.1 Formulation of Plan of Reorganization

A plan of reorganization outlines each of the different types of a debtor's debts and equity interests and contains the terms pursuant to which they are to be treated. The bankruptcy laws require that certain types of claims and interests be grouped into classes, and that other types of claims not be grouped into classes. The designation of classes of claims and interests, and the treatment of both classified and unclassified claims, and of interests, is detailed below.

The Debtor is also required to identify those classes of claims and interests that are impaired under the Plan and what classes of claims and interests are unimpaired under the Plan. In general, a claim or interest is impaired if the plan alters the legal, equitable, or contractual rights

to which the holder of the claim or interest would be entitled absent the filing of the Bankruptcy Case.

**3.2    Classified Claims and Interests  -  Description of Holders and Treatment**

The Bankruptcy Code permits certain claims and interests to be placed in particular classes in a plan of reorganization.  In broad terms, any claim or interest within a class must be substantially similar to the other claims or interests in such class.  The classification of claims and interests is significant because, subject to certain limitations and requirements, different classes of claims and interests may be subject to different treatment.  In addition, the holders of claims and interests are permitted to cast ballots only within the classes to which their claims and interests belong; as more fully described in Article VIII, a plan of reorganization generally may be confirmed so long as it is accepted by at least one impaired class.

The classification regimen of creditors' claims, along with a brief description of the nature of each of the classes of claims and interests, and the respective treatment of each, is given below.

**3.3 Classified Claims and Interests.**

**Class 1-Unsecured Creditors**

Class 1, the "Class of Unsecured Creditors," consists of the general unsecured claims against the Debtor that are not classified elsewhere in the Plan ("Class 1 Claims").  Based on its review of the schedules, its books and records, and the proofs of claim filed with the Bankruptcy Court, the Debtor estimates that the aggregate of Class 1 Claims will be approximately $724,707.

The Debtor may object to such claims after confirmation, after reviewing any proofs-of-claim filed in the case.   If the Debtor is successful, the total amount owed to unsecured creditors will decrease, and the percentage of such claims to be paid under the Plan will increase.  For plan purposes, the Debtor anticipates that Class 1 will total $724,707.   This amount includes the claim of Granite Re, Inc.  This amount does not include a potential unsecured claim of Alliance Bank in the approximate amount of $469,000.

**Treatment of Class 1**

Members of Class 1 may opt to be paid according to the terms of one of the two alternatives below.

**Option 1 – Single Payment**

Class 1 Members choosing Option 1 ("Option 1 Creditors") will be paid, on the Effective Date or as soon thereafter as is practicable, the lesser of: (i) ten percent (10%) of their respective allowed claims, or (ii) $500.00.  In the event that any creditor with a claim exceeding $5,000 wishes to elect treatment under Option 1, such creditor must affirmatively waive that portion of the claim over and above $5,000.

**Option 2 – Payment**

After payment of all necessary business expenses including but not limited to wages, salaries, taxes, materials and payment to Alliance Bank, the Debtor will do an annual cash sweep of its deposit account(s) and pay Class a total of 50% of the disposable income realized from the cash sweep ("Annual Payment"). Class 1 Members choosing Option 2 ("Option 2 Creditors") will be paid their pro rata share of the Annual Payment and an Annual Payment will be made on December 31 of each of the five (5) years following the Effective Date with the first Annual Payment to be made on December 31, 2010.

The Annual Payment, as opposed to a monthly or quarterly payment, is due to the fact that the Debtor's business is seasonal and does not cash flow every month of the year.

In addition to the annual installments, Option 2 Creditors will be entitled to their pro rata share of an amount equal to the proceeds in excess of administrative expense claims of any avoidance claims that the Debtor has under Chapter 5 of the Bankruptcy Code, whether such proceeds are received as a result of settlement or judgment. Payments of the proceeds of avoidance claims will be due and payable by the date that is ten days after the later of: (i) the date on which the Court enters an order closing the bankruptcy case; (ii) the last date on which final judgment is entered in any avoidance action commenced by the Debtor before the Bankruptcy Court.

**Class 2 – Alliance Bank**

The Class 2 Claim arises out of the Debtor's obligations to Alliance Bank ("Alliance") under a promissory note in the original principal amount of $250,000.00 (the "Class 2 Note"). As of the Filing Date, the balance owed under the Class 2 Note was $214,101.00. The Class 2 Note is secured by a first position priority security interest in all of the Debtor's personal property.

The Class 2 UCC Financing Statement was filed on September 12, 1996 with the Minnesota Secretary of State as document number 1877457. There have been several amendments and continuations since 1996.

Regarding Alliance's Bank's overall claim, as noted above in the description of Class 1 claims, in addition to Class 2 and Class 3, there is another loan owed to Alliance Bank in the current amount of $469,000, but it is unclear at this time if the Debtor is an obligor, guarantor or simply provided collateral for this loan. Regardless, this loan is unsecured as to the Debtor due to the value of the Debtor's assets and will be treated, if appropriate, as an unsecured claim.

**Treatment of Class 2 Claim**

Class 2 will have an allowed secured Class 2 claim in the amount of $214,101.00, plus accrued and unpaid interest, and less any payments of principal made after the Filing Date, if any. With respect to the Class 2 Claim, the Plan constitutes a promissory note which will include the following material terms:

The Class 2 Note principal will be $214,101.00. Interest will accrue at the rate of 5% for the balance of the term of the loan and the maturity date will be the 10th anniversary of the Effective Date. Payments will be in an amount equal to $2,271 per month. However, the Debtor is not required to make monthly payments and may make one or more payments by the end of each calendar year following the Effective Date sufficient to equal to $27,252 on an annual basis.

There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time. The remaining terms of the underlying loan documents will remain in effect. To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

**Class 3 – Alliance Bank**

The Class 3 Claim arises out of the Debtor's obligations to Alliance Bank ("Alliance") under a security agreement securing loans totaling $468,000. Class 3 is secured by a second position priority security interest in all of the Debtor's personal property.

The Class 3 UCC Financing Statement was filed on September 12, 1996 with the Minnesota Secretary of State as document number 1877457. There have been several amendments and continuations since 1996.

**Treatment of Class 3 Claim**

Class 3 will have an allowed secured Class 3 claim in the amount of $468,000, less any payments of principal made after the Filing Date, if any. With respect to the Class 3 Claim, the Plan constitutes a promissory note which will include the following material terms:

The Class 3 Note principal will be $468,000. Interest will accrue at the rate of 0% for the balance of the term of the loan and the maturity date will be the 10th anniversary of the Effective Date. Payments will be in an amount equal to $3,900 per month. However, the Debtor is not required to may monthly payments and may make one or more payments by the end of each calendar year following the Effective Date sufficient to equal to $46,800 on an annual basis.

There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time. The remaining terms of the underlying loan documents will remain in effect. To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

**Class 4-Granite Re, Inc.**

The Class 4 Claim arises out of the Debtor's secured obligations to Granite Re, Inc. ("Granite Re"). Granite Re is owed $707,000 arising from an indemnity agreement signed by the Debtor to guaranty obligations of another company owned by the Debtor's principal. Granite Re filed a UCC-1 Financing Statement with the Minnesota Secretary of State on July 9, 2008 as document number 200812448092, but its security interest does not extend to any property owned by the Debtor. As such, its claim is fully unsecured and even if it was secured, the value of the

Debtor's property does not secure any amounts owed to Granite Re because Alliance Bank has priority over Granite Re and Alliance Bank's claim consumes the full value of the Debtor's property.

**Treatment of Class 4 Claim**

Class 4 will have an allowed unsecured claim for $707,000.00 and will be treated in Class 1. Class 4's secured claim will be $0. Granite Re shall file within ten (10) days of the Effective Date a termination of its UCC-1 Financing Statement.

Confirmation of this plan shall constitute an Order authorizing the Hennepin County District Court to dismiss the Debtor's counterclaim, for an accounting, against Granite Re, Inc.

**Class 5– Equity Interests**

Class 5 consists of all interests arising out of or related to the equity interests in the Debtor ("Class 4 Interests"), including, without limitation, all financial and all governance rights associated with any and all membership interests issued at any time by the Debtor, and which remain outstanding.

**Treatment of Class 5 Interests**

The Class 5 Interests will remain in place on account of the need to preserve net-operating-loss carryforwards and in exchange for the 98%-shareholder's commitment to manage the daily operations of the Debtor for the term of the plan.

Confirmation of this plan shall constitute an injunction prohibiting the sale or assignment of any of the Debtor's stock for a period of five (5) years from the Effective Date.

### 3.4 Impaired and Unimpaired Classes

All classes of claims are impaired under the Plan, while the class of interests is unimpaired.

### 3.5 Unclassified Claims – Description of Holders and Treatment of Claims

### 3.5.1 Pre-Petition Priority Government Claims

"Pre-Petition Priority Government Claims" consists of all timely filed and allowed claims of governmental units for a pre-petition claim that is accorded a priority status pursuant to Section 507(a)(8) of the Bankruptcy Code. Pursuant to the mandates of Section 1129(a)(1) of the Bankruptcy Code, Pre-Petition Priority Government Claims are not classified in the Debtor's Plan. The Debtor is not liable on any such claims.

**Treatment of Pre-Petition Priority Government Claim**

If the Debtor is found to be liable on any such claims, the Pre-Petition Priority Government Claims will be paid, in full, over a term ending on or before the sixth anniversary of the date of assessment. From and after the Effective Date, Pre-Petition Priority Government Claims will accrue interest on the terms and at the rate provided for in 26 U.S.C. §6621(b), and will be paid in periodic payments so that such claims are fully amortized and paid in full over a period ending not later than the date that is five years after the Filing Date.

### 3.5.2 Administrative Expenses

"Administrative Claim" means any claim for the payment of any administrative expense arising under Section 503(b) of the Bankruptcy Code.

Subject to the specific terms provided for below, the Debtor will pay each holder of an allowed Administrative Claim (except any such holder that agrees to different treatment) the allowed amount of such holder's allowed Administrative Claim, in cash, on the Effective Date; provided, however, that allowed Administrative Claims representing post-petition liabilities incurred in the ordinary course of business by the Debtor will be paid as they come due.

**(a)     Professional Fees**

Professional fees that constitute Administrative Claims are the allowed fees and costs of the professionals that have been employed in the course of the Bankruptcy Case.

Assuming the relatively orderly administration of the Bankruptcy Case, the Debtor estimates that professional fees will accrue and be paid as follows:

| Professional | Estimated Fees & Costs | Amounts Paid and/or Retainer to be Applied | Amount to be Paid through Plan |
|---|---|---|---|
| Hinshaw & Culbertson LLP Attys. for Debtor | $50,000 | $30,000 | $20,000 |

Provided the professionals receive Bankruptcy Court approval of their fees and expenses, these claims for professional fees identified above shall be paid in full in cash on the Effective Date, or on such date as the Court may fix, or upon such other terms as may be agreed upon by the professional and the Debtor. The Debtor currently projects that professional fees will be paid out of the proceeds of avoidance actions more fully described below.

**(b)     U.S. Trustee Fees and Court Costs**

U.S. Trustee fees and court costs that constitute Administrative Claims are those obligations imposed by operation of 28 U.S.C. §1930 (all such fees and costs will be referred to as "U.S. Trustee Fees").

The Debtor will pay all U.S. Trustee Fees owed by the Debtor, as and when due, until this Bankruptcy Case is closed. In addition, the Debtor will continue to comply with all reporting requirements imposed by the U.S. Trustee until this Bankruptcy Case is closed.

**(c)     Other Administrative Expense Claims**

There may be other Administrative Claims, such as the following: (1) filed proofs of claim for administrative expenses; (2) post-petition taxes; (3) unpaid post-petition claims incurred in the ordinary course of business; and (4) certain claims associated with executory contracts and unexpired leases (the treatment of claims arising out of executory contracts and unexpired leases is more fully described in Section 3.5 below) (all of the foregoing will be referred to as "Other Administrative Claims"). The Debtor has remained current on all of its post-petition obligations, and does not believe that it is liable on any Other Administrative Claims.

To the extent that there are any allowed Other Administrative Claims, such claims will be paid, in full and in cash, on the Effective Date, or as otherwise agreed to by the Debtor and the claimant, subject to the following exception: For claims incurred in the ordinary course of business after the Filing Date, the Debtor will pay such claims as they become due, or otherwise in the ordinary course of Debtor's business.

**3.6     Executory Contracts and Unexpired Leases**

The Debtor is party to those executory contracts and unexpired leases described in Exhibit A, the Schedule of Executory Contracts and Leases. Pursuant to Section 365 of the Bankruptcy Code, a debtor in possession may either (i) assume the contract, (ii) reject the contract, or (iii) assume and assign the contract. The treatment that any contract or lease receives in the course of a bankruptcy case dictates the nature of the claim that the non-debtor party may have by reason of the contract or lease. Generally, the rejection of a contract or lease will give rise to a general unsecured claim for damages and pre-petition arrearages, while the assumption of a contract or lease will require that all defaults be cured, and claims related to monetary defaults will be afforded priority status under the Bankruptcy Code.

The treatment of the various executory contracts and unexpired leases to which the Debtor is a party is specified in the Schedule of Executory Contracts and Leases.

From and after the date on which an order confirming the Plan is entered, the Debtor will timely perform its obligations according to the terms of all assumed contracts, as the same may be modified by the terms of the Plan. Notwithstanding the foregoing, with respect to arrearages outstanding as of the date on which a contract or lease is assumed, the Debtor will cure such

arrearages promptly after the Effective Date, or as otherwise agreed to by the Debtor and the other party to any affected contract.

As to rejected contracts and leases, the parties to such contracts and leases may have claims arising under the terms of the relevant agreement, or arising from the rejection of the contract or lease, or both.  In accordance with the provisions of the Bankruptcy Code, any claim based on the rejection of an executory contract or unexpired lease will be treated as an unsecured claim. Unless otherwise ordered by the Court, the deadline for filing a proof of claim for any such claim arising from rejection of a contract or lease will be fixed at 30 days from the date on which an order confirming the Plan is entered.   THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

**Contracts and Leases not Specified**

If the Debtor is a party to any executory contracts or unexpired leases that are not specifically identified in the Schedule of Executory Contracts and Leases, the Debtor will ***REJECT*** all such executory contracts and unexpired leases, with the following exceptions:  (i) except as may be provided for in any prior Court order entered with respect to a motion for assumption or rejection of such executory contract or unexpired lease, and (ii) except as may be provided for in any motion pending before the Bankruptcy Court on the date of the hearing on confirmation of the Plan.  Except as may be provided otherwise herein, such rejection will be effective as of the date on which an order confirming the Plan is entered.

## IV.  PROOFS OF CLAIMS AND OBJECTIONS TO CLAIMS

In general, creditors are permitted to file proofs of claims with the Bankruptcy Court pursuant to Bankruptcy Rules 3001 or 3002.

Certain creditors may hold or assert  claims for the payment of administrative expenses of the types described in Section 503(b) of the Bankruptcy Code.  Unless otherwise ordered by the Bankruptcy Court, the deadline by which administrative claims must be timely filed is thirty days after the date on which an order confirming the Plan is entered.  Administrative expense claims must be asserted by motion filed and served by the deadline set forth herein.  SUBJECT TO SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING ADMINISTRATIVE EXPENSE CLAIMS.

Certain creditors may have claims arising from the rejection of executory contracts or unexpired leases, whether rejected under the Plan or pursuant to a motion filed during the pendency of the Bankruptcy Case.  Claims for damages arising out of such rejection must be asserted by the filing of a proof of claim within thirty days after the date on which an order confirming the Plan is entered.  Parties to executory contracts and unexpired leases that have been or may yet be rejected by the Debtor, by motion or otherwise, at or before confirmation  must file proofs of claims for any damages from such rejection in accordance with the Bankruptcy Court's order

approving such rejection, or, if the order does not so provide, pursuant to the terms of this paragraph.  THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

## V. CLAIMS OF THE DEBTOR AGAINST OTHERS

**5.1     Claims from Bankruptcy Laws – Preferences, etc.**

The bankruptcy laws create a number of claims and causes of action that a debtor-in-possession may pursue for the benefit of the bankruptcy estate.  Among the rights of recovery that are available to a debtor-in-possession are those based on theories of preferential and fraudulent transfer.

A preference is a payment or other transfer of property to or for the benefit of a creditor, before the bankruptcy case was commenced, on account of an antecedent debt, that: (1) was made while the debtor was insolvent; (2) was made within the time period(s) specified in Section 547(b)(4) of the Bankruptcy Code; and (3) enabled the creditor receiving the transfer to receive more than the creditor would receive if the case were a case under Chapter 7 of the Bankruptcy Code. When a debtor avoids a preferential transfer, the preference defendant is required to return the payment or other transfer made, and the preference defendant then ordinarily has an unsecured claim in the amount of the returned preference.

An avoidable fraudulent conveyance under the bankruptcy laws is a transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was either: (a) undertaken with actual intent to hinder, delay, or defraud any present or future creditor; or (b) a transaction under which the debtor received less than a reasonably equivalent value, and (i) the debtor was insolvent on the date the transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation; (ii) the debtor was engaged in business or a transaction, or was about to engage in such business or transaction for which the debtor's remaining assets would be insufficient; or (iii) the debtor intended to incur or believed that it would incur debts that would be beyond the debtor's ability to pay as such debts matured.

After a review of its books and records, the Debtor has not identified any avoidable transfers but reserves the right to continue to review its records and bring actions as it deems necessary to avoid such transfers. Any recovery will be paid over first in satisfaction of administrative expense claims, and any remainder paid to the holders of Class 1 Claims on a pro rata basis.

**5.2     Claims of or against Insiders**

The Debtor is unaware of any viable claims against insiders or of claims that any insiders might assert against the Debtor or the estate.

### 5.3 Setoffs

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but will not be required to, setoff against any claim and the payments or other distributions to be made pursuant to the Plan in respect of such claim, claims of any nature whatsoever the Debtor, as successor in interest to the Debtor, may have against the holder of such claim. Neither the failure to setoff, nor the allowance of any claim hereunder will constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder.

## VI. POST CONFIRMATION

The Bankruptcy Code requires a debtor to disclose information about certain events and circumstances occurring after confirmation of the plan of reorganization. The Debtor provides that description below. After confirmation of the Plan, operations and events will continue to be governed by certain provisions of the Plan, as set forth below.

### 6.1 Means for Execution

### 6.1.1 Plan Funding

The viability of the Plan is based on the assumption that the Debtor will continue to earn income from its continued operations. Projections of the Debtor's operations through the term of the Plan are attached as Exhibit B. The projections are a detailed accounting of income and expenses through the term of the Plan. A copy of the Debtor's 2008 Profit and Loss Statement is attached as Exhibit C. The 2008 performance demonstrates the feasibility of the Debtor's Plan. The net profit was just over $74,000 and certain expenses are not expected to be incurred during the term of the plan such as legal and consultants and Saint Paul rent. These amounts total $19,034 in 2008. In addition, there are expenses on the 2008 P&L for bank fees and interest totaling $9,680.

Assuming a similar performance for each year of the plan, the net profit of $74,000 is approximately the amount required to pay Class 2 and Class 3, leaving approximately $28,000, half of which will be paid to Class 1. Also, the Debtor's projections are conservative estimates.

### 6.1.2 Plan Distributions
The distributions under the Plan will be made by the Debtor on the dates provided for in the Plan, or on such earlier dates as the Debtor, in its sole discretion, may choose. The Debtor reserves and retains the right to prepay any obligation under the Plan without penalty. Any payment or distribution required to be made under this Plan on a day other than a business day will be made on the next succeeding business day, or as soon thereafter as practicable.

The Debtor will not be required to make any payment or distribution on account of any disputed claim, until the dispute has been resolved and then, only to the extent that the disputed claim becomes an allowed claim, whether by agreement of the parties or by final order of the Bankruptcy Court. As soon as practicable after the disputed claim is resolved by the Debtor or the parties, or allowed by agreement or final order, and subject to the terms of the Plan, the

Debtor will pay and distribute to the holder of such allowed claim the amount provided in the Plan in the manner provided in the Plan, subject to the following condition: The Debtor may choose, in the alternative, to make any additional payment or distribution to the creditor holding a previously disputed allowed claim to bring distributions on account of such claim current with where they would have been had the claim never been subject to objection.

In the event that any property to be distributed under the Plan remains unclaimed or otherwise not deliverable to a creditor entitled thereto as of the later of: (a) one year after the date on which an order confirming the Plan is entered; or (b) one hundred twenty (120) days after any distribution called for under the terms of the Plan, such property will become vested in and will be transferred and delivered to the Debtor. Unclaimed property includes, but is not limited to, checks issued pursuant to the Plan and not negotiated within ninety (90) days of the date such check was issued.

The Debtor will withhold from any property distributed under this Plan, any amounts required to be withheld for federal, state, or local taxes. The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, is exempt from application of any law imposing a stamp tax, transfer tax, or other similar tax.

Except as expressly stated in the Plan or otherwise allowed by a final order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Filing Date will be allowed on any claim, regardless of whether any objection to the claim is filed and sustained. No attorneys' fees will be paid with respect to any claim except as specified in the Plan, or as allowed by a final order of the Bankruptcy Court. Accordingly, payments and distributions under the Plan will not include, provide for, or otherwise take into account any such interest, penalty, late charge, or attorneys' fees.

Distributions to be made under this Plan to holders of allowed claims will be made by first class United Sates mail, postage prepaid to (a) the latest mailing address set forth in the schedules if no proof of claim was filed with respect to such claim; or (b) to the address appearing on a proof of claim as the address to which notices should be sent if a proof of claim was filed with respect to such claim. Distributions will be deemed made as of the time they are deposited in the United States mail.

### 6.1.3 Continued Existence

After the Effective Date, the Debtor will continue to exist in accordance with the applicable law in the jurisdiction in which it is incorporated and pursuant to its articles, bylaws, and other organization documents in effect prior to the Effective Date, except to the extent such articles, bylaws, or other organization documents are amended or modified pursuant to the Plan. The articles, bylaws, and other organizational documents will be and hereby are amended and restated as necessary to satisfy the provisions of the Plan and the Bankruptcy Code. After the Effective Date, the Debtor may, but will not be required to, amend or restate its articles and bylaws as permitted by applicable law, provided that such amendment or restatement may not conflict with any provisions of the Plan. On the Effective Date, all actions contemplated by the

Plan will be authorized and approved in all respects, and all matters provided for in the Plan involving the corporate structure of the Debtor will be deemed to have occurred and will be in effect, without any requirement of further action by the equity holders, directors, or officers of the Debtor. As of the date on which an order confirming the Plan is entered, the officers and directors of the Reorganized Debtor are authorized to issue, execute, and deliver the agreements, documents, and other instruments contemplated by the Plan.

Without limiting the generality of the foregoing, as of the Effective Date, the Debtor's articles will be deemed amended, to the extent necessary, and as consistent with the requirements of Section 1123(a)(6) of the Bankruptcy Code, to prohibit the issuance of nonvoting securities, and to authorize the number of shares necessary to comply with the terms of the Plan.

### 6.1.4 Management and Compensation of Management

From and after the Effective Date of the Plan, the Debtor's operations will be managed by Oliver M. Hage. In addition to his continuing role as the Debtor's only director, Mr. Hage will continue to be the Debtor's only officer. The Debtor reserves the right to give its officers and directors periodic raises, provided that such raises are for the limited purpose of maintaining substantial salary uniformity, on an adjusted dollar basis, during the term of the Plan. In light of the foregoing stated purpose for salary increases, during the term of the Plan, no increase in the salary of an officer or director will deviate substantially from the proportionate increase in the Consumer Price Index during the period between the date on which the proposed raise is to take effect and the later of: (i) the Effective Date, and (ii) the most recent date on which the officers or directors were given a raise. The Debtor will pay Mr. Hage $80,000 on an annual basis.

### 6.1.5 Equity Structure of Reorganized Debtor

From and after the Effective Date, the equity structure of the Reorganized Debtor will be substantially identical to the equity structure as of the Filing Date.

### 6.1.6 Implementation of Plan

The Plan will be implemented upon entry of an order confirming the Plan.

The Plan may be modified in the manner provided for under Section 1127 of the Code. The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by the Court. The Debtor reserves the right to make such modifications at any hearing on confirmation as may be necessary to facilitate confirmation of the Plan.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan, and said order not being stayed, appealed, or otherwise challenged before the expiration of the applicable deadline; provided, however, that the Debtor may, in its sole discretion, choose to undertake and perform its obligations under the Plan notwithstanding the pendency of an appeal.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan.

### 6.1.7 Post-Confirmation contact with Debtor regarding Plan.

Parties-in-Interest who desire to speak with the Debtor regarding the plan after confirmation may call Fran Hage at 612 861 4243

### 6.2 Reservation of Rights, Powers and Jurisdiction

### 6.2.1 Rights and Powers

Except as otherwise expressly provided in the Plan, the Debtor will retain, after confirmation of the Plan, full right and power to do any of the following:

(a) Object to the allowance of claims;

(b) Seek subordination of claims;

(c) Pursue any claims against third parties, including, but not limited to those based on theories of preference, fraudulent transfer, or any other action arising under Chapter 5 of the Bankruptcy Code;

(d) Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a trustee or debtor-in-possession; and

(e) Pursue any causes of action that the Debtor may have as of the date on which an order confirming the Plan is entered. Any and all causes of action that the Debtor may have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Debtor as of confirmation of the Plan, and will not be affected by confirmation or the passing of the Effective Date of the Plan, except as otherwise specifically provided in the Plan.

The Debtor may object to the allowance of claims within the time period provided for in the order confirming the plan, or as otherwise dictated by order of the Court. The Debtor's authority to object to the allowance of claims will not be affected in any way by the Debtor's failure to object to allowance of any claim for purposes of voting.

### 6.2.2 Court Approval

After confirmation of the Plan, the Debtor may, but will not required to, seek the Court's approval of any of the following:

(a) settlements regarding objections to claims;

(b) settlements regarding claims against third parties;

(c) settlements regarding allowance of fees and expenses incurred by professionals employed during the pendency of the Bankruptcy Case.

If the Debtor chooses to seek court approval of any such settlements, the Debtor will not be required to provide notice to creditors as would typically be provided during the chapter 11 case or to file and serve a motion for the approval of the settlement. Instead, the Debtor will be authorized to seek approval by filing a stipulation setting forth the material terms of the settlement, along with a proposed order providing for the approval of such stipulation.

### 6.2.3  Jurisdiction

Until the Plan has been fully consummated, the court will retain jurisdiction over, and the Debtor will retain standing and the right to pursue any cause of action, proceeding, or other request for relief related to the following:

(a) classification of the claims of creditors;

(b) determination of the allowed amount of any claims arising before or during the pendency of the Bankruptcy Case;

(c) subordination of the allowed claims of creditors;

(d) determination of any counterclaims against any creditor, including any claim for turnover of property of the Debtor and any claim for offset of the value of the property against the claim of the creditor;

(e) determination of the allowed amount of claims for damages from the rejection of executory contracts or unexpired leases;

(f) determination of all issues and disputes regarding title to the assets of the estate and the Debtor;

(g) determination of all causes of actions between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code, and to avoid any preferential or fraudulent transfers;

(h) correction of any defect, the curing of any omission or the reconciliation of any inconsistency of the Plan or the order confirming the Plan as may be necessary to carry out the purpose and intent of the Plan;

(i) interpretation and enforcement of the terms of the Plan;

(j) shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(k) entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor;

(l) entry of an order concluding and terminating the case; and

(m) approval of any settlement related to any of the foregoing.

The Debtor's transfer or assignment of any interests or rights will not affect the Court's retention of jurisdiction to the full extent provided herein.

## 6.3 Effects of Plan Confirmation

### 6.3.1 Binding Effect

The Plan will be binding upon and inure to the benefit of the Debtor, all present and former holders of claims against, or interests in, the Debtor, and all respective successors and assigns.

### 6.3.2 Discharge and Injunction

TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE CODE, CONFIRMATION OF THIS PLAN CONSTITUTES A COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF ALL CLAIMS AGAINST AND INTERESTS IN THE DEBTOR EXCEPT AS PROVIDED IN THIS PLAN. THE DISCHARGE WILL OPERATE TO RELEASE AND EXTINGUISH ANY PURPORTED LIENS, ENCUMBRANCES, OR SECURITY INTERESTS CLAIMED BY A CLAIMANT OR ANY OTHER ENTITY AGAINST PROPERTY OF THE DEBTOR, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN. THE ORDER CONFIRMING THE PLAN IS A GENERAL ADJUDICATION AND RESOLUTION WITH PREJUDICE OF ALL PENDING LEGAL PROCEEDINGS AGAINST THE DEBTOR, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

THE DISCHARGE AND THE ORDER CONFIRMING THE PLAN OPERATE AS AN INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE BANKRUPTCY CODE. ANY CREDITOR OR EQUITY HOLDER ENTITLED TO RECEIVE ANY DISTRIBUTION PURSUANT TO THIS PLAN WILL BE PRESUMED CONCLUSIVELY TO HAVE RELEASED THE DEBTOR FROM ANY CLAIM RELATED TO THAT WITH RESPECT TO WHICH THE DISTRIBUTION IS MADE. THIS RELEASE WILL BE ENFORCEABLE AS A MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER THAT ACQUIRES ANY RIGHT TO DISTRIBUTION PURSUANT TO THIS PLAN.

UNLESS A TAXING AUTHORITY HAS ASSERTED A CLAIM AGAINST THE DEBTOR BEFORE THE DEADLINE FOR FILING CLAIMS, CONFIRMATION OF THE PLAN WILL OPERATE AS A DISCHARGE OF ANY CLAIM OR LIEN OF ANY TAXING AUTHORITY AGAINST THE DEBTOR, THE ESTATE, ANY PROPERTY OF THE DEBTOR, AND ANY PROPERTY OF THE ESTATE, FOR ANY TAXES, PENALTIES, OR INTEREST: (I) FOR ANY TAX YEAR FOR A PERIOD BEFORE THE FILING DATE; (II) ARISING OUT OF THE FAILURE OF THE DEBTOR TO FILE ANY TAX RETURN; OR (III) ARISING OUT

OF AN AUDIT OF ANY TAX RETURN WITH RESPECT TO A PERIOD BEFORE THE FILING DATE.

### 6.3.3 Re-Vesting

Subject to the terms of the Plan, on the date that the order confirming the Plan is entered, the Debtor will be restored to full ownership of all property owned by the Debtor, all property of the estate, and all property dealt with by the Plan. The property so vested in the Debtor will be free and clear of all claims, liens, encumbrances, charges, and other interests of holders of claims or interests, except as otherwise provided in the Plan.

On and after the date on which the order confirming the Plan is entered, the Debtor may freely operate its business and may freely use, acquire, and dispose of property of the estate and property of the Debtor, except as otherwise provided in the Plan. Except as may otherwise be expressly provided for in the Plan or by order of the Court, the Debtor's operation of its business and use of property will not be subject to any restrictions imposed by operation of the Bankruptcy Code, the Bankruptcy Rules, or any prior Bankruptcy Court order entered during the bankruptcy case.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following is intended only as a summary of potential material Federal income tax consequences of the Plan. Neither this summary nor any other information provided herein should be construed to be the opinion of the Debtor or the Debtor's counsel for purposes of tax planning or reporting by any creditor or other party in interest. Neither the IRS nor any other taxing authority has participated in the preparation of these materials, and this discussion of tax consequences is not binding on the IRS or any other taxing authority.

Confirmation and performance according to the terms of the Plan may result in certain creditors having reportable loss or gain for purposes of Federal income taxes. Whether a given creditor will have gain or loss will depend on a number of factors, including, but not limited to, the following: (i) whether the creditor's claim arises out of a transaction that was of a personal rather than a business nature; (ii) the tax basis of the creditor's claim; and (iii) the degree to which the creditor may be able to claim that the value of a particular claim is affected by the Plan. With respect to the Debtor, the most significant potential tax consequence of the Plan would be that certain tax attributes, including, but not limited to, net operating losses, certain tax credits, and the Debtor's basis in property, could be reduced to the extent that debt is discharged. The Debtor has not determined what, if any, tax consequences it will experience by reason of the Plan.

The foregoing discussion does not constitute tax advice, and is only intended to provide a summary of certain material tax issues that each creditor might consider in deciding how to vote on the Plan. The tax consequences for any particular creditor or other party in interest will necessarily involve a large number of variables, and the Debtor therefore makes no representations as to the specific tax implications for any creditor. Creditors and other parties in interest are therefore strongly urged to seek professional advice regarding the tax consequences of the Plan.

PURSUANT TO U.S. TREASURY REGULATIONS, PLEASE BE ADVISED THAT ANY U.S. FEDERAL TAX ADVICE INCLUDED IN THIS COMMUNICATION (1) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, TO AVOID ANY U.S. FEDERAL TAX PENALTIES, AND (2) IS PROVIDED TO SUPPORT THE PROMOTION OR MARKETING OF THE PLAN. ANY TAXPAYER RECEIVING THIS COMMUNICATION SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR.

## VII. ALTERNATIVES TO THE PLAN OF REORGANIZATION

One alternative to confirmation of the Plan is conversion of the reorganization case to a liquidation case under Chapter 7 of the Bankruptcy Code. In liquidation, all of the Debtor's assets would be used first to satisfy claims held by secured creditors, and the unsecured creditors would receive a distribution only if assets were available after payment of secured claims, priority claims, administrative expense claims, and taxes incurred as a result of liquidation.

The Debtor believes in the event of a chapter 7 bankruptcy, Alliance Bank will obtain relief from the automatic stay, and foreclose on its collateral. The Debtor believes that liquidation would not yield sufficient proceeds to pay all secured claims in full, and that unsecured creditors would therefore receive nothing in liquidation. A liquidation analysis is attached as Exhibit D. Therefore, the debtor believes that this chapter 11 plan is in the best interest of all creditors.

## VIII. CONFIRMATION STANDARDS

Before confirmation, the Court must determine whether the Plan has been accepted by the holders of claims in each impaired class. For a class of claims to accept the Plan, an affirmative vote must be cast by creditors holding at least two thirds in amount and more than fifty percent in number of allowed claims. For a class of interests to accept the Plan, an affirmative vote of at least two thirds in amount of allowed interests must be cast by those who vote.

In the event that one or more impaired classes reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the rejecting classes. Generally, this means that, pursuant to 11 U.S.C. §1129(b), the Plan may be confirmed even if one or more classes of claims or interests rejects the Plan so long as the Plan provides that (1) each holder of a claim or interest in a rejecting class receives the value of that claim or interest; or (2) no holder of a claim or interest junior to those held by members of a rejecting class will receive or retain any property under the Plan. The Debtor hereby specifically reserves the right to seek confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## IX. CONCLUSION

The Debtor believes that acceptance of the Plan is in the best interest of all parties and therefore urges all holders of claims and interests to vote in favor of the Plan.

Dated: August 6, 2009　　　　　　　HAGE CONSTRUCTION COMPANY

By: /s/ Oliver M. Hage
　　　Oliver M. Hage

Its: President

HINSHAW & CULBERTSON LLP

Dated: August 6, 2009

/e/ Jamie R. Pierce
Jamie R. Pierce (#305054)
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434

Attorneys for Debtor